IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| IN THE MATTER OF THE ) | |
| SEARCH OF INFORMATION ASSOCIATED ) | FILED UNDER SEAL |
| WITH FACEBOOK USER IDS ) | |
| 100004368877296; ) | |
| TODD.CRAIGHEAD.9 ) | |
| WITH LISTED USER NAME ) | |
| TWIZZLE SMALLS THAT ) | |
| IS STORED AT THE PREMISES ) | Case No. 7:19mj139 |
| CONTROLLED BY FACEBOOK INC. ) | |

## AFFIDAVIT IN SUPPORT OF
## SEARCH WARRANT APPLICATION
## AND SEARCH WARRANT

### INTRODUCTION

I, Jason Thompson, depose and say as follows:

1. I am a Special Agent with the Drug Enforcement Administration (DEA) and have been so employed since February 2004. I have received training in the area of the current investigation and detection of controlled substance traffickers. I have conducted and assisted in investigations into the unlawful possession, possession with the intent to distribute, and distribution of controlled substances, and the associated conspiracies in violation of Title 21, United States Code Sections 841 (a)(1), and 846. I have participated in the preparation and execution of numerous arrest and search warrants for criminal offenses involving distribution of controlled substances, and conspiracy to distribute controlled substances. Furthermore, I have authored the initial and extension affidavits regarding a Title III interception of wire and electronic communications. I have coordinated and conducted surveillance in conjunction with an active Title III investigation. I have also spoken on numerous occasions with informants, suspects, and other experienced narcotics traffickers concerning the methods and practices of

drug traffickers, including the methods and practices used by drug traffickers.

I am familiar with the methods in which drug traffickers conduct their illegal activities to include communication methods, asset management, and narcotic transactions.

2. Through my training and experience, I am familiar with the drug culture in and around the Southwest Virginia Area.

3. The information contained within this affidavit is based on my personal experience as well as on information provided to me by other federal agents, local police officers, and confidential sources. Your affiant is aware that narcotic traffickers often keep drugs, firearms, and records in their residences regarding the purchase and sale of controlled substances. Such persons also keep telephone call/text/voicemail data records on their cellular device, records regarding home telephone billings, cellular telephone billings, travel (airline, hotel and rental car) receipts, money transfers, and ledgers with pay/owe information, firearms, ammunition, and any other documentation that can identify controlled drug sales/purchases and unknown co-conspirators. Further, drug traffickers often utilize and maintain records on social media that relate to drug sales, purchases, transportation, and unknown co-conspirators. All of these items have significant evidentiary value in demonstrating involvement in drug trafficking.

4. I make this affidavit in support of an application for a search warrant for information associated with a certain Facebook user ID #100004368877296; todd.craighead.9 with listed user name Twizzle Smalls that is stored at premises owned, maintained, controlled, or operated by Facebook Inc. ("Facebook"), a social networking company headquartered in Menlo Park, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to require Facebook to disclose to the

government records and other information in its possession, pertaining to the subscriber or customer associated with the user ID. Facebook user ID #100004368877296; todd.craighead.9 with listed user name Twizzle Smalls, which is believed to be utilized by Todd CRAGHEAD (hereinafter referred to as CRAGHEAD), who is believed to be a narcotics distributor operating in the Western District of Virginia.

5. I have personally participated in the investigation set forth below. The facts and information contained in this affidavit are based on my personal knowledge, as well as knowledge and information obtained from federal and state law enforcement officers. All observations referenced in this affidavit that were not personally made were relayed to me by the person(s) who made such observations, or by reports that detailed the events described by that person(s). The investigation has utilized four Sources of Information (SOI) and an Undercover Agent (UC). All four of the SOIs have provided information against their penal interest and that information has been corroborated by independent sources. The Undercover Agent (hereinafter UC) has conducted controlled purchases during the course of this investigation as set forth below.

6. This affidavit does not contain every fact known to me regarding this investigation, but rather contains information sufficient to demonstrate probable cause to believe that Todd CRAGHEAD, is engaged in a conspiracy to violate federal drug laws—to wit: conspiracy to distribute methamphetamine, in violation of 21 U.S.C. § 846, and distribution of methamphetamine, in violation of 21 U.S.C. § 841; offenses involving the use of communications facilities in commission of narcotics offenses, in violation of 21 U.S.C. § 843(b); as well as the identification of individuals who are engaged in the commission of these offenses. Since this affidavit is being submitted for the limited purpose of securing a search

warrant for information associated with a certain Facebook user ID, I have not included details of every aspect of the investigation. Facts not set forth herein are not being relied on in reaching my conclusion that the requested search warrant should be issued. Nor do I request that this Court rely on any facts not set forth herein in reviewing this application.

7. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. § 846, conspiracy to distribute methamphetamine, violations of 21 U.S.C. § 841, distribution of methamphetamine; and violations of 21 U.S.C. § 843(b), offenses involving the use of communications facilities in commission of narcotics offenses, have been committed by Todd CRAGHEAD, and others. There is also probable cause to search the information described in Attachment A for evidence of these crimes and contraband or fruits of these crimes, as described in Attachment B.

## STATEMENT OF PROBABLE CAUSE

8. This affidavit is made in support of a SEARCH WARRANT to search the FACEBOOK ID number 100004368877296; todd.craighead.9 with listed user name Twizzle Smalls

9. Beginning in approximately April 2019, DEA Roanoke began investigating the drug trafficking activities of Todd CRAGHEAD after law enforcement received information that CRAGHEAD was involved in the distribution of methamphetamine, cocaine HCL, marijuana, and crack cocaine.

10. In approximately April 2019, your affiant conducted an interview of a Source of Information (hereinafter SOI 1). SOI 1 stated that during the approximate time of late 2018, he/she observed Todd CRAGHEAD in possession of 1 kilogram of cocaine. SOI 1 stated that

CRAGHEAD told him/her that it was a "brick" referring to a kilogram of cocaine HCL. SOI 1 stated the event occurred within the Western District of Virginia.

11. In June of 2019, your affiant conducted an interview of a Source of Information (hereinafter SOI 2). SOI 2 stated that during the approximate time of spring 2018, through June 2019, he/she purchased approximately 24 ounces of methamphetamine from his/her methamphetamine Source of Supply (SOS). SOI 2 identified his methamphetamine SOS as aka TWIZZLE SMALLS. SOI 2 provided a physical description, area of residence, and partial telephone number of TWIZZLE SMALLS. Based on the information provided by SOI 2 and your affiant's knowledge of this investigation, it is believed that SOI 2 was referring to Todd CRAGHEAD as his/her methamphetamine SOS. It is known to your affiant that CRAGHEAD utilizes the aka of TWIZZLE SMALLS. Further, a telephone toll analysis of SOI 2's tolls revealed that he/she was in contact with a telephone number known to be utilized by Todd CRAGHEAD. The tolls revealed that during the approximate time of March 2019 to June 2019, there were approximately 106 telephone calls to/from SOI 2 and the telephone number believed to be utilized by Todd CRAGHEAD. Further, the tolls revealed that during the approximate time of March 2019 to June 2019, there were approximately 68 text messages to/from SOI 2 and the telephone number believed to be utilized by Todd CRAGHEAD. The toll information corroborated the statements made by SOI 2 regarding his/her frequency of supply and contact with TWIZZLE SMALLS, whom is believed to be Todd CRAGHEAD. SOI 2 stated the communications with TWIZZLE SMALLS occurred within the Western District of Virginia.

12. In June 2019, investigators obtained a state search warrant for the Facebook account information of SOI 2. The return Facebook account information listed a contact between the Facebook account for SOI 2 and Facebook account/ID number 100004368877296

with listed user name "TWIZZLE SMALLS" on April 23, 2019.

13. In July 2019, investigators conducted an interview of a Source of Information (hereinafter SOI 3). SOI 3 stated that during the approximate time of 2017 to July 2019, Todd CRAGHEAD was a methamphetamine SOS for him/her. SOI 3 stated he/she purchased multi-gram quantities of methamphetamine every several days from CRAGHEAD. SOI 3 stated that in late July 2019, he/she observed approximately 8-10 ounces of methamphetamine at CRAGHEAD's residence, which he/she described is within the Western District of Virginia.

14. In August 2019, your affiant conducted an interview of a Source of Information (hereinafter SOI 4). SOI 4 stated that during the approximate time of March/April 2019 to August 2019, SOI 2 was a multi-ounce methamphetamine SOS for him/her. SOI 4 stated that during the approximate time of mid-2019, he/she observed SOI 2 meet with SOI 2's methamphetamine SOS. SOI 4 stated SOI 2 indicated that the subject SOI 2 met with was in fact his/her methamphetamine SOS. SOI 4 stated that following the meeting, SOI 2 sold him a quantity of methamphetamine. SOI 4 positively identified a photograph of Todd CRAGHEAD as SOI 2's methamphetamine SOS.

15. In September 2019, an Undercover Agent (hereinafter UC), acting under the direction of the DEA Roanoke RO, conducted a controlled purchase of 4 ounces of methamphetamine from Timothy CRAGHEAD. Timothy CRAGHEAD is known to your affiant as the brother of Todd CRAGHEAD. Prior to the controlled purchase the UC utilized Facebook to contact Timothy CRAGHEAD to pre-arrange the details of the transaction.

16. In October 2019, your affiant reviewed Timothy CRAGHEAD's Facebook account. Your affiant observed that Timothy CRAGHEAD, brother of Todd CRAGHEAD, was previously in Facebook contact with "TWIZZLE SMALLS." "TWIZZLE SMALLS" was

referenced in a Facebook photo of Todd CRAGHEAD. In addition, there were multiple pictures of Todd CRAGHEAD on Timothy CRAGHEAD's Facebook page that your affiant positively identified as Todd CRAGHEAD.

17. Based upon the information outlined in this affidavit, I believe that Todd CRAGHEAD utilizes the Facebook account FACEBOOK ID number 100004368877296; todd.craighead.9 with listed user name TWIZZLE SMALLS to further his drug trafficking activities. Additionally, it is my belief that CRAGHEAD utilizes his Facebook account to communicate with other known and unknown co-conspirators to facilitate drug trafficking activities in the United States, in the Western District of Virginia and in other Federal Districts.

18. Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com. Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

19. Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter. This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a user identification number to each account.

20. Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request"

accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

21. Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

22. Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

23. Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video. It

also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

24. Facebook users can exchange private messages on Facebook with other users. Those messages are stored by Facebook unless deleted by the user, though some of those messages may be able to be recovered from Facebook even after deletion by the user. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. In addition, Facebook has a chat feature that allows users to send and receive instant messages through Facebook Messenger. These chat communications are stored in the chat history for the account. Facebook also has Video and Voice Calling features, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

25. If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

26. Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

27. Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

28. Each Facebook account has an activity log, which is a list of the user's posts and

other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

29. Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

30. In addition to the applications described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.
Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

31. Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Facebook typically retain records about such communications, including records of contacts

between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

32. As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, a Facebook user's IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used or controlled the Facebook account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Facebook logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, Facebook builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it

relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

33. Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

**INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED**

34. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

35. Based upon this analysis and the information outlined in this affidavit, your affiant believes that Todd CRAGHEAD utilized FACEBOOK ID number 100004368877296; todd.craighead.9 with listed user name Twizzle Smalls to further his illegal activities and that evidence of these illegal activities will be found in the information associated with the Facebook account.

_[signature]_
Jason Thompson, Special Agent
Drug Enforcement Administration

Sworn to before me this 23rd day of October 2019.

_[signature]_
HONORABLE ROBERT S. BALLOU
United States Magistrate Judge
Western District of Virginia